Joseph E. Walther and Mary Margaret Walther v. Commissioner.
Walther v. Commissioner
Docket No. 84466.
United States Tax Court
T.C. Memo 1962-207; 1962 Tax Ct. Memo LEXIS 104; 21 T.C.M. (CCH) 1119; T.C.M. (RIA) 62207; August 28, 1962
*104 Petitioners created recorded mortgage liens on two income-producing items of Indiana realty, and then conveyed said realty by gift and subject to the mortgages to a family trust which thereafter operated the properties for profit. The value of the properties (even exclusive of the substantial rentals which the trustees were receiving therefrom) was more than sufficient to satisfy the encumbrance; and the mortgage debt was at no time in default. Held, that, under Indiana law, the primary source of funds for satisfaction and payment of the encumbrance was the realty in the hands of the trustees; and that the effect of the petitioners' conveyance to the trustees of all their interest in said realty was to change their position to that of surety for any deficiency in the mortgage debt that might remain on foreclosure, after the realty had been exhausted. Held, further, that amounts which one of the petitioners paid concurrently with other amounts paid by the trustees in meeting certain installments due on the undefaulted mortgage debt, were paid voluntarily and without consideration at a time when the petitioners were under no existing legal obligation to make such payments; that *105 said amounts constituted additional gifts of corpus by the petitioners to the trust; and that the amount of such payments is not deductible by petitioners against their own gross income, under any provision of the 1954 Code. William F. Welch, Esq., Chamber of Commerce Bldg., Indianapolis, Ind., for the petitioners. Robert E. Johnson, Esq., for the respondent. PIERCE Memorandum Findings of Fact and Opinion PIERCE, Judge: The respondent determined a deficiency in petitioners' income tax for the calendar year 1957 in the amount of $2,838.02. The sole issue for decision is: Where the petitioners created a recorded mortgage lien on certain apartment house realty which they owned, and then conveyed said property subject to the *106 encumbrance, by gift to a family trust which thereafter operated the property for profit, are the petitioners entitled to deduct from their gross income as "interest," certain amounts which one of the petitioners voluntarily paid, subsequent to the conveyance and when the mortgage debt was not in default, in partial satisfaction of the encumbrance on their trustee-donees' real estate? Findings of Fact Some of the facts have been stipulated. The stipulation of facts, and all exhibits identified therein, are incorporated herein by reference. Petitioners, Joseph E. and Mary Margaret Walther, are husband and wife residing in Indianapolis, Indiana. Joseph is a physician who has his office in that city. Said petitioners filed a joint Federal income tax return for the taxable year involved, with the district director of internal revenue at Indianapolis. In 1953 petitioners purchased at a cost of $14,000, a parcel of real estate in Indianapolis, which was improved with an apartment building. Subsequently in 1956, they purchased at a cost of $80,000, another nearby parcel of real estate which likewise was improved with an apartment building. Each of these apartment properties produced *107 rental income. Thereafter, on April 3 and June 1, 1956, respectively, petitioners mortgaged both of these two improved rental properties to Fidelity Trust Company, of Indianapolis, for the respective principal amounts of $20,000 and $65,000. As to each property, they executed a separate mortgage indenture and related installment note, which mortgage was duly recorded and became an encumbrance on the property. The indenture for the first of these mortgages in the principal amount of $20,000 (which was identical with the other mortgage, except as to dates, amounts and interest rate) included provisions to the following effect: The mortgage recited that it was secured not only by the improved real estate and appurtenances thereto, but also by all the rents and income from the property. The installment note for said indenture which was in said principal amount of $20,000, was payable at the rate of $153 per month, in 179 installments due on the third day of each consecutive month, over a period of 15 years. Both the note and the indenture provided that the monthly installments when paid, were to be applied by the mortgagee, first in payment of "interest" due on the note, and secondly *108 in payment of the "principal" of the note. The principal of the note was to bear interest at the rate of 4 1/2 percent per annum from the date of the note to its maturity, and at the rate of 8 percent after maturity until paid. Neither the indenture nor the note contained any specific provision for the monthly payment of interest, as such; but rather, as above stated, each of said instruments merely provided that the installments when paid were to be applied by the mortgagee in the manner above mentioned. The effect of this was that, as the installments were paid, those portions of subsequent installments which were to be applied to "interest" would gradually decrease in amount, while those portions of subsequent installments which were to be applied to "principal" would gradually increase in amount. The mortgagors agreed to pay all taxes and insurance on the property, and to properly maintain both the real estate and the buildings. The indenture further provided that, upon default in any of the covenants, the mortgagee might, at its option and without prior notice or demand or any legal process whatsoever, cause the entire amount of the mortgage note to become immediately due *109 and payable, take possession of the mortgaged premises, collect the rents and income therefrom, and foreclose the mortgage. Also in case of an action to foreclose, the court was to appoint a receiver to collect the rents and income from the property, until the foreclosure sale. All rents or income so collected by either the mortgagee or the receiver, were to be applied in payment of the taxes, insurance and maintenance expenses, and any balance was to be applied toward payment of the debt. As before stated, the indenture and installment note for the other mortgage in the amount of $65,000 were identical, except that the installments were to be paid on the first day of each consecutive month at the rate of $514.10, in 179 installments over a 15-year period; and the principal amount of the debt was to bear interest at the rate of 5 percent per annum to maturity, and 8 percent after maturity until paid. This indenture and note likewise provided that when the installments were paid, the mortgagee should apply the amounts thereof, first to the interest on the note, and secondly toward the principal of the note. On October 31, 1956 (which was shortly after the mortgages had been executed), *110 the petitioners conveyed both of the mortgaged rental properties to a trust, which they created on the same date under a written indenture of trust. The co-trustees of this trust were Fidelity Bank and Trust Co. (successor by merger to the above-mentioned Fidelity Trust Company), and Harold F. Burdette (an associate of Joseph in his medical practice). Said conveyance to the trust was made without any consideration, by a warranty deed which stated that as to each of said properties the conveyance was subject to the above-mentioned mortgage encumbrance. The trust, as hereinafter shown, was to continue for not more than 11 years; and then, on the termination thereof, the corpus was to be distributed by the trustees to petitioners if living. Said trust indenture contained provisions to the following effect: The settlor-petitioners reserved the right to make additions to the corpus of the trust, in such form, at such times, and in such amounts as they might determine, without use of any particular formality. Otherwise, they had no power to alter, amend or revoke the trust. The trustees were given broad powers: To control and manage the trust estate; to collect the rents and income from *111 the corpus properties; and in their discretion, either to accumulate the net income or to pay or apply the same for the benefit of petitioners' six minor children whose ages ranged from 10 years to 4 years, respectively. In case any of said children should die during the period of the trust, his or her interest in any accumulated income was to go to other persons exclusive of the settlors, in the manner provided. The trust was to terminate either at the expiration of 11 years, or upon the death of all of the petitioners' said children, whichever first occurred. And upon such termination, all corpus of the trust was to be distributed to the settlor-petitioners or the survivor of them, if living, or otherwise in the manner provided. Also, Article Four of the trust indenture contained the following provisions, respecting amortization of the principal of the mortgage indebtedness on the trust properties: Anything herein to the contrary notwithstanding, the CO-TRUSTEES shall apply, as an advancement, so much of the income, rents and profits received by them from the parcels of real estate * * * as is required for the scheduled amortization of the principal of the mortgage indebtedness *112 existing upon, or against, said real estate * * *; and shall demand and collect of and from the SETTLORS periodically as such advancements are made during the existence of this Trust, in reimbursement of such advances so made by the CO-TRUSTEES, cash, interest bearing secured promissory notes of the SETTLORS payable at or before the termination of this Trust, or other securities, in an amount equal to such advancements so made by the CO-TRUSTEES for amortization of principal of said mortgage indebtedness in that year, it being the intent of the SETTLORS and a condition of the Trust hereby created that this Trust shall not bear the burden of amortizing the aforementioned indebtedness thereon and that the rights hereunder to which the beneficiaries hereinafter designated are entitled shall not be diminished or impaired thereby. Concurrently with the creation of said trust, the petitioners executed another instrument, entitled "Collateral Open-End Note." This instrument recited, in substance and pertinent part, that: "For value received," the petitioners promised to pay to the order of the co-trustees "an amount equal to the total of any and all advancements [thereafter] made by the *113 Payees from time to time, pursuant to Article Four of the aforesaid Indenture of Trust, for the scheduled amortization of the principal of the mortgage indebtedness." And it further stated that such amount would become due and payable at or before the termination of the trust created by the aforesaid indenture of trust (which was the time when the corpus of the trust would be distributed to the petitioners, if living, as the remaindermen). At the time petitioners executed this instrument, which purported to relate only to payments of principal, the trustees had not made any such advancements; and the amounts, if any, which they might thereafter advance were not determinable. Also at said time, the date of payment, which was related to the time of termination of the trust, was not determinable. The petitioners received no consideration for the execution of said instrument. The trustees, after thus acquiring the encumbered title to the two apartment properties, operated said properties for profit; and they filed fiduciary income tax returns in which they reported the gross income, deductible expenses and net income from their operations. During their first fiscal year (which began *114 immediately after the creation of the trust and ended October 31, 1957) they reported gross income from rentals received from the properties in the amount of $17,507.91; and in their following fiscal year which ended October 31, 1958, they reported gross income from such rentals in the amount of $18,388.46. Out of such gross income, they paid and deducted all their expenses of operating the properties, including such items as advertising, supplies, repairs, fuel, utilities, trustees' fees, and accounting fees; and they also paid and deducted certain items required to be paid under the terms of the two mortgages covering the trust properties, including the property taxes, insurance, and maintenance costs. In addition, they also paid out of the trust income, certain portions of the monthly installments due under said mortgages (as is hereinafter more fully shown). In neit8er year did the trustees distribute or apply any net income for the benefit of the petitioners' children who were the income beneficiaries of the trust. As regards the installments on the two mortgages covering the trust properties, which became due during the year 1957 in the monthly amounts of $153 and $514.10, *115 respectively (being a total of $667.10 per month), these were handled as follows: The trustees would, on or about the first of each month, send to the mortgagee their check for a portion of the two current installments (such check being in an amount which they computed to be equal to that part of the installments which the mortgagee was to apply on the principal of the mortgage debt). And, at the same time, petitioner Joseph Walther would send to the mortgagee, his personal check (labeled "Interest on Mortgage") for the balance of the two current installments (such check being in an amount which he computed to be equal to that portion of the installments which the mortgagee was to apply to interest on the mortgage debt). The stipulated amounts of said checks of the trustees and of Joseph which were so delivered to the mortgagee during the year 1957, and the stipulated dates on which said checks were paid, were as follows: Checks of
Checks of Trustees
Joseph Walther
Total of
Installments
Date of
Date of
Installments
for month
payment
Amount
payment
Amount
paid
January 1957
1/ 8/57
$ 329.78
Not shown
Not shown
February
1/25/57
331.12
1/28/57
$ 335.98
$667.10
March
2/28/57
332.46
3/ 1/57
334.64
667.10
April
4/ 1/57
333.82
4/ 4/57
333.28
667.10
May
4/30/57
335.17
5/ 2/57
331.93
667.10
June
6/ 4/57
336.54
6/ 5/57
330.56
667.10
July
7/ 3/57
337.91
7/ 8/57
329.19
667.10
August
7/25/57
339.28
7/26/57
327.82
667.10
September
8/29/57
340.66
8/30/57
326.44
667.10
October
10/ 8/57
342.04
10/10/57
325.06
667.10
November
10/30/57
343.44
10/31/57
323.66
667.10
December
11/27/57
344.83
12/ 2/57
322.27
667.10
January 1958
12/31/57
346.23
1/ 2/58
320.87
667.10
Total
$4,393.28
$3,941.70
*116 All of said payments by Joseph were made voluntarily, at times when the mortgage debt was not in default, and when no demand by the mortgagee for payment and no proceeding to foreclose the mortgages were pending. The value of the mortgaged properties (even exclusive of the rentals being received by the trustees thereform) was more than sufficient to satisfy the total amount of the mortgage debt. The petitioners, in their joint income tax return for the year 1957, reported adjusted gross income in the amount of $105,008.41, and net income of $95,351.48. And they claimed in said return a deduction for interest on mortgages in the amount of $4,528.99, of which $3,941.70 represented the above-mentioned amounts which Joseph had paid in partial satisfaction of the mortgage installments for the two apartment properties held and operated by the trustees as the corpus of the trust. The Commissioner, in his notice of deficiency herein, disallowed the claimed deduction for said amount of $3,941.70, with the following explanation: It is determined that * * * [said amount] fails to qualify as an interest deduction as provided in Section 163(a), or any other section of the Internal Revenue *117 Code of 1954, and such amounts are accordingly disallowed. Ultimate Finding of Fact The amounts which Joseph paid, totaling $3,941.70, were paid voluntarily and without consideration; and they were intended by the petitioners to be, and were, additional gifts of corpus to the family trust. Opinion Decision of the issue here presented requires answers to the following basic questions: (1) Whether the amounts totaling $3,941.70, which Joseph Walther paid during the taxable year in partial discharge of the mortgage encumbrance on the apartment properties owned and operated by the family trust, actually were (as petitioners contend) paid by him under the impelling force of a then existing legal obligation to make such payments; or whether (as respondent contends) said amounts represented additional gifts of corpus to the trust, which were made voluntarily and without consideration, at times when the mortgage debt was not in default, and when no legal liability had arisen against petitioners in their position as surety of said debt, which in any way required them to make such payments. (2) Whether, in any event, petitioners are entitled to deduct from their own gross income, *118 as "interest," the amount of the above-mentioned payments which Joseph made. 1. As regards the first of said questions, the leading Indiana case of Gregory v. Arms, 48 Ind. A. 562, 96 N.E. 196 (on which both of the instant parties have relied on brief), sets forth certain basic principles of Indiana law, regarding the nature and extent of the liability of a mortgagor who has conveyed the mortgaged property to another person, to thereafter pay the encumbrance on the grantee's property. There, the position taken by the appellee-grantee was the same as that of the petitioners in the instant case, i.e.: That the mortgagor was, after the conveyance as before, primarily liable as a principal for the debt. And the position of the appellant (estate of the mortgagor-grantor) was the same as the position of the respondent herein, i.e.: That the conveyance subject to the mortgage, ipso facto made the real estate the primary source of funds for payment of the mortgage debt; and that the mortgagor thereafter occupied the position of surety, instead of principal. The court in deciding the case in favor of the appellant (mortgagor-grantor) said in material part: Where a person takes *119 a deed to real estate subject to incumbrances thereon, he does not thereby become personally liable to discharge the pre-existing liens, but, in the absence of any showing to the contrary, the purchaser is deemed to have deducted the amount of the prior incumbrances from the purchase price, and the land in his hands becomes the primary source of funds out of which the incumbrances are to be paid. [Citing authorities.] * * * * * * If * * * the conveyance is made subject to the mortgage, upon the foreclosure, the purchaser of the land, while not liable personally, cannot prevent the real estate being first exhausted for the payment of the mortgage debt, and the mortgagor will only be liable on the personal judgment against him for the amount, if any, remaining due on the judgment after the real estate has been exhausted. [Citing authorities.] * * *
we are not to lose sight of the fundamental proposition that conveyance subject to existing liens, where the deeds are duly recorded within the time provided by law, charges the grantee with notice of all that is shown by the record, including the recitals in the deeds, and that such conveyance makes the real estate the primary *120 source of funds for the payment and satisfaction of such incumbrance. * * * the language of the deed "subject to all liens and charges now existing on the same" is sufficient in law to make the real estate the primary source of funds for the payment of the $500 mortgage, and to place John Gregory [the mortgagor-grantor] in the situation of surety as to that obligation as against the land or appellee. * * * In any event, the obligation remained the individual debt of John Gregory [the mortgagor-grantor] until paid, the only effect of the deed being to change him from the position of principal to that of surety as against the grantee and the mortgaged premises * * * [Italics supplied.] Also, West's Indiana Law Encyclopedia, Vol. 20, ch. 7 on mortgages, states: [A] mortgagor who has conveyed subject to the mortgage, and is then compelled to pay the debt, may reimburse himself by recourse to the mortgaged premises. [Italics supplied.] Such statement gives further recognition to the above-mentioned position of the mortgagor as a surety, instead of a principal; for it is obvious that if the mortgagor had been compelled to pay the debt as principal, he would have *121 no right to reimbursement. Our examination of the Indiana authorities convinces us that the above-mentioned basic principles set forth in the Gregory case, were effective at the time of the transactions here involved. Miscellaneous cases cited by petitioners on brief in support of their contrary position are distinguishable on the basis of the facts, issues, and contractual obligations of the parties involved therein. In the instant case, as we have hereinbefore found, all the amounts that Joseph Walther paid in partial satisfaction of the encumbrances on the properties owned by the family trust, were paid at times when the mortgage debt was not in default, when no foreclosure proceeding was pending, when the mortgagee was not attempting to compel payments by petitioners of any deficiency, and when the value of the encumbered properties (even exclusive of the substantial rentals that the trustees were receiving therefrom) was more than sufficient to statisfy the amount of the encumbrance. Accordingly, we hold, on the basis of the above-mentioned principles of Indiana law, that said amounts paid by Joseph were not paid by him or his wife under the impelling force of any then existing *122 legal obligation to make such payments, either as surety or otherwise; that said amounts were paid for the benefit of the trust, voluntarily and without consideration; and that such amounts constituted additional gifts of corpus made by petitioners to the trust. 2. There is no merit to petitioners' contention that they are entitled to deduct from their own gross income, as "interest," the amounts of the above-mentioned payments which Joseph made. The encumbered realty in the hands of the trustees was, under the above-mentioned principles of Indiana law, the primary source of funds for the payment and satisfaction of the encumbrance; and there is no question that the trustees, as the legal owners of such realty, could themselves deduct in their own fiduciary income tax return, as "interest," that portion of any installments paid by them which the mortgagee was obligated to credit to "interest" - even though the trustees were not directly liable on the mortgage note. (See provision to this effect in Income Tax Regulations, sec. 1.163(b)). But the petitioners, who had conveyed to the trustees all their interest in said realty and had thereby changed their *123 position to that of surety for any deficiency in the mortgage debt in the event of a default, could not, by merely making voluntary payment of portions of the installments at times when no default had occurred, thereby appropriate to themselves and deduct against their own personal gross income, all the amounts which the mortgagee was to credit to "interest" out of the installments concurrently paid by the trustees and by Joseph. The fact that Joseph labeled his checks as "interest" payments, and that he by obvious anticipatory arrangement with the trustees meticulously computed the varying amounts of his checks to be exactly equal to the amounts which the mortgagee was expected to credit to "interest" out of the total payments made by the trustees and him, is unimportant. Also, it is of no consequence that by such anticipatory arrangement he sent his checks directly to the mortgagee, rather than sending them to the trustees so that they could themselves send the amounts thereof to the mortgagee and claim the interest deduction. As the Supreme Court said in Commissioner v. Duberstein, 363 U.S. 278, 286: "It scarcely needs adding that the parties' expectations or hopes *124 as to the tax treatment of their conduct in themselves have nothing to do with the matter." We sustain the respondent's determination that the amounts paid by Joseph in the total sum of $3,941.70 are not deductible by petitioners, either under section 163(a) of the 1954 Code (relating to "interest"), or under any other section of said Code. Decision will be entered for the respondent.